IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ROGER D. HILL                                                                                                    PLAINTIFF

VS.                                              CIVIL NO. 05-3026

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                               DEFENDANT

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Roger Hill, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB"), and a period of disability under the provisions of Title XVI of the Social Security Act ("Act").

### Procedural Background:

Initially, plaintiff filed an application for DIB on February 2, 1987, alleging an inability to work since November 15, 1986, due to a variety of impairments. On August 28, 1987, an Administrative Law Judge ("ALJ") issued a fully favorable decision, finding plaintiff disabled since November 15, 1986. Plaintiff received benefits until 1991, when he returned to work. The agency determined that this work constituted substantial gainful activity ("SGA"), and terminated his benefits as of August 1991. Subsequently, plaintiff stopped working. Because he stopped working during his Extended Period of Eligibility ("EPE"), plaintiff's benefits were reinstated. However, he again returned to work at the SGA level, and his benefits were again terminated as of March 31, 2000.

On August 9, 2000, plaintiff filed a second application for a period of disability and DIB. Again, he alleged an onset date of November 15, 1986, and that his disability had never ceased. On October 23, 2001, an administrative hearing was held regarding this second application. A

supplemental hearing was then held on July 24, 2002. Plaintiff was present and represented by counsel at both hearings.

At the time of the administrative hearing, plaintiff was thirty-three years old and possessed a tenth grade education. (Tr. 174-175). His past relevant work ("PRW"), consisted of employment as an oil field equipment mechanic and a pump and tank servicer. (Tr. 60, 199).

On October 22, 2002, the Administrative Law Judge ("ALJ"), issued a written decision finding that plaintiff's back pain and degenerative disc disease ("DDD") of the lumbosacral spine were severe impairments. (Tr. 27). However, he concluded that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. After discrediting plaintiff's subjective allegations, he determined that plaintiff retained the residual functional capacity ("RFC") for light work, limited by his inability to stand and/or walk for more than two hours during an eight-hour workday. The ALJ further limited plaintiff to occasional bending, and no stooping, climbing, or crawling. He then concluded that plaintiff could return to his PRW as a bartender, self-employed building contractor, or construction superintendent. (Tr. 27).

On March 5, 2005, the Appeals Council declined to review this decision. (Tr. 4-7). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. Both parties were afforded the opportunity to file appeal briefs, but plaintiff has chosen not to do so. (Doc. # 7).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record

contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents his from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached

does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Evidence Presented:**

In 1986, plaintiff injured his back in a work-related accident. (Tr. 362). The record shows that plaintiff maintained consistent treatment for his pain until April 4, 1995. (Tr. 321-323). After his April 4, 1995 visit with Dr. Wilbur, plaintiff did not seek medical treatment until five years later, when he visited Dr. George Lawrence on August 15, 2000. (Tr. 320). At that time, plaintiff reported experiencing a sudden pain and pop in his back. (Tr. 311). He indicated that the pain was so bad that it dropped him to his knees. Plaintiff stated that the only neurological change he had noted was a different sensation in his arms and legs. Dr. Lawrence noted that plaintiff was unable to sit down secondary to pain. His range of motion was limited secondary to pain, and his sensation was grossly diminished on the right as compared to the left lower extremity. Dr. Lawrence also noted marked tenderness over the paraspinous muscles, particularly in the thoracic area. Accordingly, plaintiff was diagnosed with back pain, and prescribed Relafen and Vicodin. (Tr. 311).

In a letter dated November 9, 2001, Dr. Lawrence noted that he had placed plaintiff on conservative measures in August 2000, but did not see him again until June 15, 2001. (Tr. 346). Dr. Lawrence indicated that June 15, 2001, was the last time he had treated plaintiff, despite recommending a follow-up appointment and offering to refer plaintiff for a neurosurgical consultation and an MRI. (Tr. 346). Dr. Lawrence concluded that, since plaintiff failed to follow-up with him, plaintiff's impairments had improved. (Tr. 346).

On May 14, 1998, Dr. Alice Martinson, an orthopaedic specialist, conducted a consultative examination of plaintiff for the DDS. (Tr. 307-308). She noted that he demonstrated no motion below the mid-thoracic level in any direction on request, and moved very stiffly and guardedly through the motions of dressing and undressing. (Tr. 308). Seated root testing produced back discomfort, and plaintiff had extremely tight hamstrings, which allowed only ten degrees of straight leg raising on the right and twenty degrees on the left. Deep tendon reflexes were symmetrically hypoactive at both knees and ankles. X-rays of the lumbar spine revealed a fifty percent anterior wedging of the L1 vertebral body. The L5-S1 disc space was also moderately narrow. She then gave him a total body impairment rating of twenty-five percent. Dr. Martinson indicated that plaintiff was capable of performing work that did not involve repeated bending, stooping, or lifting more than twenty pounds. She also found that his speech, vision, hearing, manual dexterity, standing, walking, and sitting were unimpaired. It was her opinion that he was an excellent candidate for vocational rehabilitative services. (Tr. 308).

On March 4, 2002, Dr. Martinson examined plaintiff for a second time, after which she completed a Medical Source Statement of Ability To Do Work- Related Activities (Physical). (Tr. 349-352). Records indicate that he could demonstrate no forward flexion, extension, lateral bend, or rotation without pain. (Tr. 347). His seated root test was positive, and his straight leg raising was limited to twenty degrees bilaterally, due to hamstring tightness. Plaintiff also had mild hypesthesia to light touch in the lateral aspect of the left calf and foot. X-rays showed a forty percent anterior wedge compression of the L1 and sclerosis and narrowing of the L5-S1 disc space. As such, Dr. Martinson concluded that his symptoms and x-rays were highly suggestive of spinal stenosis. (Tr. 348). She then assessed him as having a ten percent total body impairment rating. Accordingly, Dr.

5

Martison determined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk less than two hours in an eight-hour workday, sit for less than about six hours in an eight-hour workday alternating between sitting and standing, and push and/or pull without limitations. (Tr. 349-350). Dr. Martinson also indicated that plaintiff had no manipulative, visual/communicative, or environmental limitations, but that he had postural limitations in that he could occasionally balance and kneel and could never climb, crouch, crawl, or stoop. (Tr. 350-352).

On November 12, 2001, Dr. Robert Kerr, plaintiff's treating physician, completed an RFC Questionnaire. (Tr. 340-344). Dr. Kerr indicated that he had treated plaintiff since his injury in 1986. (Tr. 340). He stated that plaintiff had been diagnosed with degenerative disease of the spine, and had a poor prognosis. Plaintiff's symptoms were said to include constant pain in the back and knees. Dr. Kerr noted that plaintiff's pain would frequently be severe enough to interfere with the attention and concentration he needed to perform even simple work tasks, and that plaintiff was incapable of tolerating even "low stress" jobs. (Tr. 341). Dr. Kerr also determined that plaintiff could walk two or three city blocks without rest or severe pain; that he could sit for fifteen to twenty minutes at a time before needing to get up; and that he could stand for twenty to thirty minutes at a time before needing to sit or walk around. (Tr. 341-342). He noted that plaintiff could sit, stand, and/or walk for less than two hours in an eight-hour workday; that he needed to walk for at least ten minutes every twenty minutes during the eight-hour work day; that he needed to shift positions between sitting, standing, and walking at will; and, that he needed to take fifteen minute breaks every one to two hours during the eight-hour workday. (Tr. 342). Dr. Kerr found that plaintiff could lift and carry ten to fifteen pounds in a competitive work situation; that he could rarely lift up to ten pounds in an eight-hour workday; and, that he could occasionally crouch and climb ladders and

6

stairs, rarely stoop or bend, and never twist. (Tr. 343). Finally, Dr. Kerr indicated that plaintiff would likely be absent from work more than four days per month, as a result of his impairments or treatment. (Tr. 344).

A CT scan of plaintiff's cervical spine dated May 26, 2003, showed severe degenerative changes at the C5-C6 level with bony spurring and disc calcifications, but no definite displaced cervical spine fracture. (Tr. 359).

**Discussion:**

We first address the ALJ's assessment of plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

As outlined above, we note that plaintiff failed to obtain consistent medical treatment for his alleged impairments. The record shows that plaintiff maintained consistent treatment for his pain until April 4, 1995. (Tr. 321-323). However, after April 4, 1995, plaintiff did not again seek medical treatment until five years later, when he visited Dr. Lawrence on August 15, 2000. (Tr. 320). In a letter dated November 9, 2001, Dr. Lawrence noted that on August 15, 2000, he had

placed plaintiff on conservative measures, but did not him again until June 15, 2001. (Tr. 346). Dr. Lawrence indicated that June 15, 2001, was the last time he had seen plaintiff, despite offering to refer plaintiff for a neurosurgical consultation and an MRI. (Tr. 346). Dr. Lawrence stated that since plaintiff failed to follow-up with him, he assumed that plaintiff's impairments had improved. (Tr. 346). Further, at the administrative hearing on October 23, 2001, plaintiff testified that he had seen his treating physician only once in the past twelve months. (Tr. 373). We note that an ALJ may discount a claimant's subjective complaints of disabling pain based on a failure to pursue regular medical treatment. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

In addition, plaintiff testified that he took over-the-counter pain medication, such as Tylenol and BC powder to relieve his pain. (Tr. 303, 365-366). *See Riggins v. Apfel*, 177 F.3d 689, 693 (8th Cir. 1999) (holding that the mere use of nonprescription pain medication is inconsistent with complaints of disabling pain). This lack of strong pain medication is inconsistent with plaintiff's subjective complaints of disabling pain. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs supports discrediting complaints).

Furthermore, on his Supplemental Interview Outline, plaintiff indicated that a possible side effect of his medication was an upset stomach. (Tr. 258). However, this is the only mention of medication effects contained in the record. There is no medical evidence indicating that plaintiff suffered from or reported suffering from medication side effects. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (no medical evidence of record to support plaintiff's allegations of medication side effects). Likewise, the lack of any medically necessary restrictions in the record, aside from those contained in the RFC assessments prepared in support of plaintiff's application, supports the

8

ALJ's finding that plaintiff's impairments are not as severe as alleged. *See Melton v. Apfel*, 181 F.3d 939, 941 (8th Cir. 1999).

We also note that plaintiff applied for, and collected, unemployment benefits, which suggests that he is not disabled. Plaintiff testified that he collected unemployment benefits from October 2000 through December 1, 2000. (Tr. 374). The United States Court of Appeals for the Eighth Circuit has held that "a claimant may admit an ability to work by applying for unemployment compensation because such an applicant must hold himself out as available, willing, and able to work." *Johnson v. Chater*, 108 F.3d 178, 180-181 (8th Cir. 1997) (quoting *Jernigan v. Sullivan*, 948 F.2d 1070, 1074 (8th Cir. 1991)). Thus, plaintiff's receipt of unemployment benefits suggests that he was able to work during this time frame.

The record also indicates that plaintiff did work after his alleged onset date. The record shows that on May 7, 1991, plaintiff began working eight hours a day, five days a week, as a laborer at Do-All Contracting. (Tr. 212). Sometime thereafter, plaintiff stopped working as a laborer, and in October 1991, he formed Hill Contracting, a construction remodeling company. (Tr. 216). Plaintiff testified that, from October 1991 until 1997, he worked eighty to one hundred hours a month as the construction superintendent at Hill Contracting. (Tr. 366). *See Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) (holding that even part-time work is evidence of a person's ability to perform SGA). The evidence also reveals that he worked as a bartender from January 2000 through July 2000. (Tr. 242). We note that seeking work and working at a job while applying for benefits are activities inconsistent with complaints of disabling pain. *Dunahoo v. Apfel*, 241 F.3d 1033, 1039 (8th Cir. 2001).

Plaintiff's own reports concerning his activities of daily living also contradict his claim of disability. On his August 12, 2000, Supplemental Interview Outline, plaintiff reported an ability to care for his personal hygiene, do the laundry, wash dishes, change sheets, vacuum/sweep, take out the trash, change a tire, mow the lawn, shop for groceries and clothes, and go to the bank and Post Office. (Tr. 256). Plaintiff further indicated that he could prepare meals, pay bills, drive unfamiliar routes, walk for errands or exercise, watch television, listen to the radio, read, visit with friends and relatives, and teach bowling. (Tr. 257). *See Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (ability to care for one child, occasionally drive, and sometimes go to the store); *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996) (ability to visit neighbors, cook, do laundry, and attend church); *Novotny v. Chater*, 72 F.3d at 671 (ability to carry out garbage, carry grocery bags, and drive); *Johnston v. Shalala*, 42 F.3d 448, 451 (8th Cir. 1994) (claimant's ability to read, watch television, and drive indicated his pain did not interfere with his ability to concentrate); *Woolf v. Shalala*, 3 F.3d 1210, 1213-1214 (8th Cir. 1993) (ability to live alone, drive, grocery shop, and perform housework with some help from a neighbor). Clearly, plaintiff's daily activities do not support his allegations of severe pain and disability because he is able to perform many of the activities associated with daily life.

Further, we can find no reason to discount the ALJ's decision to dismiss the testimony of plaintiff's wife. The ALJ noted that her testimony merely corroborated plaintiff's testimony. (Tr. 26, 376-378). Therefore, the same evidence that supported discounting plaintiff's testimony also supported discounting the testimony of the lay witnesses. *Wheeler v. Apfel*, 224 F.3d 891, 896 (8th Cir. 2000) (The same evidence supported discrediting both plaintiff's and her husband's testimony). The ALJ also noted that Mrs. Hill had a financial stake in the outcome of plaintiff's disability

10

hearing, which also hurt her credibility. (Tr. 26). Because the determination as to the weight given to Mrs. Hill's testimony was clearly within the ALJ's province, we believe that dismissal of her testimony on these bases was proper. *See Siemers v. Shalala*, 47 F.3d 299, 302 (8th Cir. 1995); *Ownbey v. Shalala*, 5 F.3d 342, 345 (8th Cir. 1993).

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any and all gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d at 1213 (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability. Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

Plaintiff also contends that the ALJ erred in finding that he maintained the RFC to perform a range of light work. It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000). The United States Court of Appeals for the Eighth Circuit has also stated that a "claimant's residual functional capacity is a medical question," *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000), and thus, "some medical evidence," *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000) (per curiam ), must support the determination of the plaintiff's RFC, and the ALJ should obtain medical evidence that addresses the claimant's "ability to function in the workplace." *Nevland v. Apfel*, 2 04 F.3d 853, 858 (8th Cir. 2000). Therefore, in evaluating the plaintiff's RFC, *see* 20 C.F.R. § 404.1545(c), while not limited to considering medical evidence, an ALJ is required

to consider at least some supporting evidence from a professional. *Cf. Nevland v. Apfel*, 204 F.3d at 858; *Ford v. Secretary of Health and Human Servs.*, 662 F. Supp. 954, 955, 956 (W.D. Ark. 1987) (RFC was "medical question," and medical evidence was required to establish how claimant's heart attacks affected his RFC).

In the present case, the ALJ considered the medical assessment of a non-examining agency medical consultant, an orthopaedic consultative examination, the RFC assessment of a treating doctor, plaintiff's subjective complaints, and his medical records. On September 20, 2000, Dr. Davidson determined that plaintiff could occasionally lift and carry twenty pounds and frequently lift and carry ten pounds; and, could stand, walk, and/or sit for about six hours in an eight-hour workday. (Tr. 313). Dr. Davidson also found plaintiff to have no manipulative, visual, communicative, or environmental limitations, but concluded that he did have postural limitations that limited him to occasional climbing, balancing, stooping, kneeling, crouching, and crawling. (Tr. 314-316). We find that the ALJ was entitled to give Dr. Davidson's opinion significant weight because she provided objective support for her assessment. (Tr. 319). *Lauer v. Apfel*, 245 F.3d 700, 705 (8th Cir. 2001) (the weight given the opinions of non-examining sources depends on the degree to which they provide supporting explanations).

In addition, the RFC assessments completed by Dr. Martinson, an orthopaedic specialist, also provide substantial support for the ALJ's determination of plaintiff's RFC. She determined that plaintiff could lift twenty pounds occasionally and ten pounds frequently, stand and/or walk less than two hours in an eight-hour workday, sit for less than six hours in an eight-hour workday alternating between sitting and standing, and push and/or pull without limitations. (Tr. 349-350). Dr. Martinson also indicated that plaintiff had no manipulative, visual/communicative, or environmental

limitations, but that he had postural limitations in that he could occasionally balance and kneel and could never climb, crouch, crawl, or stoop. (Tr. 350-352).

Further, we find that the ALJ permissibly discounted the opinion of Dr. Kerr, plaintiff's treating physician. Dr. Kerr's opinion is inconsistent with the record as a whole. First, in his opinion, Dr. Kerr indicated that he did not know whether plaintiff was malingering. (Tr. 340). In fact, in a letter dated January 3, 2003, Dr. Kerr admitted that the did not have any way to determine whether plaintiff was malingering or not, without understanding a little bit more about plaintiff. (Tr. 357). This indicates that, although Dr. Kerr was plaintiff's treating physician, he did not know plaintiff well enough to make this type of determination.

We also note that plaintiff's daily activities indicate that plaintiff is capable of performing numerous tasks that require a significant amount of attention and concentration, in spite of Dr. Kerr's conclusion to the contrary. Plaintiff indicated that he was capable of changing a tire, shopping for groceries and clothes, running errands to the bank, preparing meals, paying bills, driving unfamiliar routes, reading, and teaching bowling. (Tr. 256-257). Furthermore, he worked in a number of different jobs after the onset of his disability, evidencing his ability to perform work-related activities and tolerate work stress. Accordingly, we believe that the ALJ was warranted in discrediting Dr. Kerr's opinion, as it is inconsistent with the record as a whole. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002). Therefore, the ALJ properly found that plaintiff retained the RFC to perform a range of light work, including lifting ten pounds frequently and twenty pounds occasionally, standing or walking up to two hours at a time and up to six hours in a standard eight-hour workday, and occasionally bending. Further, he was correct in concluding that plaintiff could not climb, crawl, or stoop. (Tr. 27).

We also find that substantial evidence supports the ALJ's finding that plaintiff could return to his PRW. The record reveals that plaintiff worked as a construction superintendent from 1991 to 1997. (Tr. 366). Plaintiff indicated that this position required lifting ten pounds occasionally and ten pounds frequently, lifting and carrying small hand tools such as hammers and hand saws, walking for three hours a day, standing for six hours a day, and kneeling for two hours each day. (Tr. 253).

The record also shows that plaintiff worked as a bartender from January 2000 through July 2000. (Tr. 242). He reported that this job required lifting less than ten pounds occasionally and frequently, lifting bottles of liquor to shoulder level in order to make drinks, walking and standing from five to eight hours a day, and sitting for half an hour each day. (Tr. 254). Plaintiff also noted that he was required to write reports and complete forms. (Tr. 254).

Clearly, plaintiff's RFC did not prevent him from performing the functional demands of his past work. A claimant who can perform the actual functional demands of his PRW will not be found disabled. *Evans v. Shalala*, 21 F.3d 832, 833-834 (8th Cir. 1994). Therefore, the ALJ properly determined that plaintiff could return to his PRW as a bartender and construction superintendent.

## **Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

ENTERED this <u>14th</u> day of April 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE